Next case on the docket, Wehmeyer v. Caterpillar, Inc. Counsel for the appellant, you may proceed. Good morning, Justice Welch, Justice Moore, and good morning, Justice Barberis. Good morning. Thank you. May it please the court, counsel, my name is Clyde Keene, and I'm here to argue for a reversal of an order granting a new trust. I'm arguing that on behalf of Caterpillar Corporation. Caterpillar, in November of 2014 in St. Clair County, won a hard-fought jury verdict defending itself against an attack on its product. It produced evidence that its telehandler, the product in issue, was not defectively designed, that it adequately warned against the use of the widget, and that it tipped over not because of any flaw in the machine, but because its operator was not trained on how to employ a safety device that, if used, would have prevented the accident and avoided the plenty of injuries. After a six-day jury trial, the jury found a general verdict for Caterpillar and against the plaintiff. The plaintiff then asked for a new trial based on four reasons. Notably, Judge Lokanoff did not find that this verdict was against the manifest weight of the evidence, to be sure. There was more than adequate evidence in the record to support the verdict for Caterpillar in this case. Additionally, Judge Lokanoff did not reverse himself on an earlier finding that the sole proximate cause of the injury, or the alleged sole proximate cause of the injury, the contractor, William Yoder, was not according to this action when it went to the jury. What he did decide was that a new trial was in order and that the jury verdict should be taken away because he felt he erred in giving the sole proximate cause instruction to the jury and that he erred in allowing certain evidence on the issue of damages that dealt with certain aspects of the plaintiff's pre-accident life. It is Caterpillar's position today with this court that Judge Lokanoff used his discretion. He used it because no reasonable trial judge would grant a new trial for having given an instruction that was totally and decidedly proper. The sole proximate cause instruction in this case should have been given as it was. Also, that no reasonable trial judge would grant a new trial on the alleged errors dealing with damages in this case because those errors were not so pervasive nor prejudicial as to create a likelihood that the jury would have been affected on their decision making on liability and causation because of those errors. I want to address the second aspect, the damages issue first. As the court knows, the general rule is that when errors are alleged to have occurred with regard to a damages issue, it does not call for a reversal or in this case a new trial if the defendant succeeded on the issue of liability. That's the general rule. The exception to that rule, which is implicit in the finding by Judge Lokanoff, although he did not say so, is that this is a case where those things that were allowed to come in in error or alleged error against the plaintiff were so pervasive and so prejudicial as to affect the jury's decision making on the issue of liability. Caterpillar has more evidence that it wanted to show to put in that was prevented. Let me give you the theory of Caterpillar. The plaintiff was seeking loss of normal life by virtue of this accident. He was asking for $2.5 million for that category of damage. What Caterpillar wanted to do was to be able to put in evidence of what normalcy of life was like for Mr. Waymore. Caterpillar wanted to introduce evidence, undisputed evidence, that for 30 years he drank 18 to 30 beers every day and that he used crack, cocaine, and snorted cocaine as well for 24 years. That was excluded from the evidence. What was allowed was a truncated form of what the problems that he had in his life to show what his normal life was like. So the things that came in and the things that Judge Lokanoff is granting a new trial for because he thinks they were pervasive and prejudicial are these. That the plaintiff had told his consul that he may have fathered a daughter but doesn't really know for sure and doesn't care. That all of his children cared about was money. That the plaintiff had been physically abused by his father as a child. That his father and stepmother tried to be appointed guardians of his affairs and that concerned him because he thought they were trying to get at his money. And that there was tension between the plaintiff's family and his wife. That package of facts or the errors that Judge Lokanoff felt he allowed to come in on the issue of damages of normal life. The plaintiff concludes that that package of error allowed the jury to dislike and distrust the plaintiff. It went to the likability of the plaintiff essentially. And when I look at that, I ask myself, there's a disconnect here with regard to this package. I look at it and I ask myself, is telling the jury that the plaintiff was abused as a boy by his father going to make the jury dislike the plaintiff? Is telling the jury that he doesn't want an abusive father to be his guardian of his assets and money going to make the jury dislike the plaintiff? Is telling the jury that his wife doesn't get along with his family members going to make the jury dislike the plaintiff? The only thing that was said of this package of material would be that would paint him in a bad light potentially. Would be the fact that he told his counselor that he potentially fathered a child. Doesn't know for sure and doesn't care. And that all of his children like, or all of his children care about his money. And I think most parents would at some point feel that about their children.  But I'm here to say that that doesn't warrant starting over and doing a new trial. And to understand that clearly, you need to understand the exception of where it applies. And this court applied it in all versus Stockard to meet true. In that case, Gordon Mag wrote the opinion and went through the general rule that you don't reverse a brand new trial based on errors of edge with regard to damages when the defendant won on my bill. But he also went through the exception and he said this is a case. Hall is a case in which this exception applies. And it did. But this is not the case. In Hall, Dr. Dmitri performed a flawed tubal ligation on Hall. When he found that out, he offered her a second tubal ligation operation to correct his errors and do it free. When the case went, she declined to do it. And she subsequently developed a tubal pregnancy that caused her all kinds of problems. And she sued Dr. Dmitri. When it went to trial, the jury was told about the second tubal ligation offered and the fact that she had declined to do it. And then they were instructed on her duty to mitigate her damages by having taken the operation. Well, this court held a tubal ligation is not a minor surgery. It's a major thing. And she had no duty to take that second operation. And then the issue became, well, does the defendant have to sit a new trial because he won on my billing? This was entered in error on the issue of mitigation of damages. Here's what Justice Magg wrote. And it shows the comparison between here and there and the use of the exception. It was not unreasonable or surprising that a juror would take the duty improperly imposed on a misplaintiff to suffer a second ligation surgery and relate it directly to causation and fault. It would not be unreasonable for a jury to believe that but for the plaintiff's failure to have the second ligation surgery performed, she would not have experienced the unwanted tubal pregnancy. And therefore, completely shifting the jury's attention away from the point of service malpractice. That makes sense. But it doesn't make sense here. It doesn't make sense that unknown fatherhood, children wanting money, parents seeking guardianship, tension between the wife and his family, and his physical abuse at the hands of his father would be so pervasive and prejudicial to this plaintiff that he gets a new trial, a reset over it. So, let's turn to the other reason preventing the trial. The sole proximate cause instruction was improper in this case. This is a case that is a perfect fit for the sole proximate cause instruction. It's unquestioned that Caterpillar produced evidence during the course of this trial that would justify giving the sole proximate cause instruction. I say unquestioned because right in the record, plaintiff's counsel said that if you're going to say, judge, that Yoder is not a party to this suit, yeah, I agree, there's evidence of sole proximate cause. Well, the Supreme Court has said in Lonardi v. Loyola University that where there's evidence of record to support an instruction of sole proximate cause, it should be given. This is a simple truth in this case that underscores all of the other arguments in the case. There was evidence of sole proximate cause, and the jury needed to hear the instruction to be able to apply that evidence to the law. It was a totally appropriate instruction. So, let's look, knowing that the jury had evidence of sole proximate cause, why should they not be told how to use that evidence? The plaintiff says because Yoder was a party, the comments to the instruction say it only applies to conduct of third parties, not parties. If a person is a party, the instruction tells you, you instruct under 4103, which is the allocation of judgment provision of the instruction, and that makes sense. The problem here is what did the commentators to the instruction mean by party? Because Yoder was clearly not a party defendant or a third party when this case went to the jury. When was he dismissed? He was dismissed on Monday before it went to the jury. What date did it go to the jury? I think November 2nd. November 2nd is when the jury returned the verdict. The day after, I believe, the dismissal. Okay, so the issue evolved during the, well, whether or not Yoder should be on the verdict forms, they started arguing about it, and the issue about, well, was he served with a copy of the complaint? It evolved into a dispute because the face of the form summons has a block for complaint attached, but it doesn't have any blocks for counterclaims. And so the plaintiff maintained, well, he must have been served by catecholam with a copy of the complaint. You see, plaintiff's counsel, well, sir, here's what it came down to. Was there any disagreement about the dismissal at the time of the dismissal? Was there any disagreement about the dismissal at the time? Of the dismissal, no. Catecholam's dismissal, no. Catecholam had Yoder served with a copy of third party complaint for contribution. He was a party during the course of the trial by virtue of being served with that counterclaim. But when it was dismissed, he ceased to be a party for purposes of taking a judgment against him. Now, he could have been a party. The plaintiff had the opportunity in two depositions to serve him with a copy of the complaint. They chose not to. And perhaps with the strategy in mind that it was not lost on anyone, that he was seriously at fault for what happened in this accident, having put an untrained employee on a machine that was capable of not tipping over if a safety device was used. Perhaps they didn't want him to be a defendant in the case because of allocation and the issue of joint and several liability. I don't know. But the fact of the matter is it's undisputed that he was, that the court determined that he was never served with a copy of the complaint. Now, what did the court face in making that decision? He had first, the plaintiff's counsel said, we didn't serve him with a copy of the complaint. He had defense counsel saying, we didn't either. We served him with a copy of our third party complaint for contribution. We had no interest in serving him with the complaint. The summons and the third party complaint are in the file and they both bear the same file stamp mark of November 7th. So that's consistent with the counterclaim was what was served on him. And finally, Caterpillar paid for a special process server that served York. We had no interest in paying for a special process server to serve the plaintiff's complaint. And I will submit, even if they had tried to serve the complaint, but did serve the complaint, the plaintiff could have easily said, we don't want to serve him. We don't want him served. So I guess it evolves into a question of whether or not naming a person in a complaint makes them a party for purposes of never being able to use the sole proximate cause instruction. And that seems preposterous. It would eviscerate, it would be a rule that would eviscerate the sole proximate cause instruction. You couldn't use the sole proximate defense against settled defendants in a case that were originally named. And that's just not the way things work. So we did, we've argued in our briefs, and I'm not going to argue it here, you know, if the next two issues that the plaintiff is now raising for why the proximate cause instruction shouldn't have been given, if those two issues are valid, they should have been raised at the time that the instruction was given. And they weren't. But apart from that, I don't want to address the merits of them, because these two new reasons should not be reasons to proclose the giving of the sole proximate cause instruction in this case. It was still totally appropriate. The first reason that plaintiffs say, well, it shouldn't have been given because you identified more than one cause. It has to be just only one cause. And that's been lied by Supreme Court cases that have been recently decided. We can look at Holman v. Memorial Hospital. And in that case, the hospital employees were sued for not allowing, or not telling the three treating physicians of the plaintiff, Holman, that her symptoms about numbness below the waist came on gradually. So the doctors misdiagnosed the cancerous tumor because they thought there was a sudden implosion and that she lost all use below the waist in a sudden fashion. Memorial tried to use the sole proximate cause defense, but it was affirmed in not using it. And in doing that, this is what the court wrote. In the case of Barr, the defendant did not present evidence or argue that it was only the negligence of persons, persons, only the negligence of persons, other than the hospital employees which approximately caused the plaintiff's injury. The defendant did not charge that the plaintiff's treating physicians were negligent in their accidental omissions. Clearly, the court recognized that the sole proximate defense can be used when there's conduct by third parties other than the plaintiff, more than one. In that regard, I will tell you Caterpillar never veered from the fact that the sole proximate cause was Yoder, the employer, who put an untrained employee on a machine that was safe in the terrain in which it was being operated. If the machinery that was on it was used. If the leveling device had been used, this machine doesn't tip over. That was the sole proximate cause. Caterpillar never implicated K.S., the renter of this machine, as a cause of this accident. Never argued it, never blamed him. K.S. had settled out before this case. If Caterpillar wanted to implicate them as another person who was the sole proximate cause of the case, it could have. The law, the Supreme Court law, would have allowed for it. And after the Holman case, you have Nolan versus Neal McLean. That's the definitive case where it was reversed because the sole proximate cause instruction was not allowed to be fleshed out by the defendant by showing that 12 other individuals had exposed the plaintiff to asbestos that caused this mess up to go on. Clearly, the Supreme Court recognized that you can't. The sole proximate cause is not isolated to showing just one particular cause. It's the ability to show that the defendant is not a proximate cause and that another or others are the proximate cause. That's the defense. The second new reason that the plaintiff gives for not having, for supporting the finding that it was error and a new trial should be granted because the sole proximate cause instruction was given. They say, well, the misuse of the machine was foreseeable by Caterpillar and therefore you don't get the sole proximate cause instruction. Why, that concept applied to the sole proximate cause instruction would practically eviscerate the defense again because you'd always have a plaintiff's expert be willing to say that the misuse of the machine was foreseeable. But beyond that, the cases cited by the plaintiff on this, if you look at them, not one of them involves the non-use of a safety device that, if used, would have prevented the accident and the plaintiff's injuries. The case of Illinois Trust Company versus Walker, a 1979 case from this court, clearly had in it the testimony of, I believe it was the defense expert actually, was asked point blank and said that the use of the jacks in that case, the misuse of the jacks in that case were a foreseeable misuse that could have been anticipated by the manufacturer of the product. There wasn't any testimony in this case that anyone, by anyone, that it was foreseeable by Caterpillar that somebody would use this machine without using the level of device on a slope of less than 10 degrees. It was right in front of them. It's right in front of them. The device is right in front of the machine. It should be able to walk. Thank you. Thank you, counsel. Rebut. Excuse me. Counsel for the appellee. You'll have an opportunity for rebut. May it please the court. I'm Roy Drips. I'm here with my partner, Mike Glodvogel, for the appellee, Chuck Waymyer. I do want to spend a little bit of time talking about standard of review in this case because Caterpillar's position throughout all of this is really rooted in a sense that they're the appellee, not the appellant. And if the trial court had denied the motion for new trial, this case would be in a completely different posture, and many of Mr. Keene's arguments would make perfect sense. But here, the court granted the motion for new trial. This court's review is not de novo. It is not manifest weight of the evidence. It is not the pedigree standard. This court's review is very deferential. The appellate court does not reverse simply because it could have reached a different conclusion than did the trial court. The applicable standard of review was crafted with the admonition that the trial court is in the best position to determine how prejudicial its own erroneous rulings are. This is why the appellate court is more deferential in reviewing a grant of a new trial than of a denial. And to reverse the grant of a new trial, this court must, as Mr. Keene acknowledged, find that the trial judge committed an abusive discretion. All three members of this panel have been state court trial judges. All three members of this panel have personal experience with realizing that things happen in the courtroom that don't translate into the printed record. And you get a sense of how jurors react to a particular piece of evidence. The trial judge hears the gasp that doesn't show up in the transcript. The burden is on the defendant in this case, as the appellant, to demonstrate that the trial court abused its discretion. And this is why the defendant's arguments about waiver, special interrogatories, abided error, and prejudice are losers. And I want to focus on one part of their reply brief for a second. In footnote 8 of the reply brief, at page 8, defendant argues that the prejudicial effects of the trial court errors in this case can't be determined from the appellate record. Now, that admission means we win for two different reasons. And the first one is the Petrosky case. And that's cited at page 22 of our brief. And that says, in reference to the standard of review, and I'm quoting, there are many things which a trial judge observes on a trial that do not appear from the record. That's been the law in this state since at least the 1930s. This is another way of saying that the trial judge is in the best position to gauge the prejudice from its own erroneous rulings. The second reason, and even more important, is that because the defendant bears the burden of establishing that the trial judge abused its discretion, their admission that you can't tell one way or the other from the record dooms their claim of reversible error. I want to address their waiver argument for just a minute. One of the biggest problems with their waiver argument is it ignores the fact that they're the appellate. Not only does this court have the power to affirm on any basis in the record, as the appellee plaintiff can advance any argument in favor of affirmance. I do want to cite one case outside of the briefs. Just for that proposition, it's NRA Veronica C. 239 Ill Second 134. Counsel, do you need to file a written motion for that purpose and give the other party an opportunity to respond? Understood. Waiver is an admonition to the parties, not to the courts, and it certainly doesn't bind the trial judge. Even if none of the parties objects to an improper instruction, the trial court has the authority to grant a new trial if it concludes that the instructions did not accurately state the law, and that's the Blankey case we cited at page 26 of our brief. The trial court can order a new trial without a motion from any of the parties. That's the Freeman v. CTA case at page 26. And perhaps the most important case in this regard is the Supreme Court's decision in McGilligan, which we discuss at pages 26 and 27. The trial court in that case had granted a new trial based on perceived instructional error. The appellate court reversed and basically adopted the same argument caterpillar advances today, that proper objection was not made at the instruction of the parties. Supreme Court reversed. Let me direct your attention to IPI 12.04, which is an issue and which is the basis for Judge Lopino's order stating that the jury, the court gave the jury the long-form version of IPI 12.04 in error. Reading from the transcript, counsel for, I believe this Mr. Blote, how do you say this, Blote-Bogle? Blote-Bogle. Oh, okay, excuse me. It stated, and this is on page 23 of the appellate's brief where he cites this portion of the transcript, that if Yoder is not a party to the case, then I would agree. There is evidence of sole proximate cause. So that was pertaining to the giving of 12.04. What do you say to that? First of all, the fact that he indicated that there was some evidence of sole proximate cause does not take away the fact that there was evidence of multiple other causes, and the trial court recognized that. The trial court had the authority to correct that error, and it would be different if we were appealing. If we were appealing and the trial judge said, no, I'm not going to give you a new trial based on your comments in the jury instruction conference, I think we'd be out of luck here. But it is different when the trial judge says, you're right, the long form should not have been given. There was multiple evidence of other fault. But the other thing, and I'll skip ahead a little bit because your question does get you the party status of Yoder. While Caterpillar's motion to dismiss was granted, and it was granted the morning the case went to the jury, Caterpillar also moved to dismiss the plaintiff's claim against Yoder, and that was denied. So Yoder was still a party. And I'm going to go through a couple of things. Do you agree that he was never served? He was never served by the plaintiff. But once he is served with summons, he is within the court's jurisdiction. And Illinois does not split up jurisdiction to, the trial court only has jurisdiction over him for the counterclaim. You have personal jurisdiction over him for all purposes. And the defendant's dismissal of their counterclaim does not deprive the court of jurisdiction over the primary complaint. The other part of that is that Caterpillar thought that Yoder was a defendant and said so multiple times on the record. Said so in their trial brief numerous times. And at the pre-trial conference, I'll give you a record site that's in the briefs, page 28, lines 3 through 10, counsel for Caterpillar says, and Yoder and Duff, Duff's the driver, Yoder's the boss, they are parties to this case. They've never appeared, they're in default, but they've been served a long time ago, and they are parties to this case, and we will ask that they be put on a verdict form as far as assessment of fault. That's what Caterpillar was telling the trial judge. They're parties, they should be on the verdict form. Despite that express representation, they waited until they got the otherwise inadmissible hearsay evidence in a trial concerning Yoder saying, my employees told me they made some mistakes, that wouldn't have been admissible if Yoder were not a party. So once they get that information in, they dismiss Yoder and then backtrack under express representation to the court concerning putting him on the verdict form. Was that all part of the jury instruction conference or was that earlier? This was at the pre-trial conference. But in the record at 825, this is when they're arguing that the admissions of the employees supposedly given to Yoder should be into evidence. They argue Mr. Yoder is a defendant. Mr. Yoder employed these gentlemen, so they are his agents. So Yoder was a defendant. Dismissing the third party complaint did nothing to change that. And under the rules, you don't have to serve a copy of the complaint. All you have to do is serve the summons. The return of service does not have to say, I served a copy of the complaint. Caterpillar's private processor filed an affidavit saying, I served a copy of the petition, which in Missouri is the complaint. So the record in this case shows Yoder was not just served with a summons, he was served with a copy of the complaint. And the trial court could have, and likely did, conclude that that made him still a party. He should have been on the verdict form. I want to talk about Holton and Abruzzo, because Mr. King talked about them. Holton and Abruzzo, and these are page 29 of our brief, required that sole cause is just that, the only cause of the incident. If the evidence establishes multiple potential causes, then the sole cause instruction cannot be given. And because he brought this up, I want to actually quote Holton. And they're discussing the trial court's refusal to give the sole proximate cause tag on IPI 12.04. And this is the quote. A defendant is not automatically entitled to a sole proximate cause instruction wherever there is evidence that there may have been more than one or concurrent causes of an injury, or where more than one person may have been negligent. Instead, a sole proximate cause instruction is not appropriate unless there is evidence that the sole proximate cause, not a proximate cause, of a plaintiff's injury is conduct of another person or condition. In this case, they blamed KAS multiple times. And the law is that if the evidence shows multiple other causes, the law can not be given. Caterpillar introduced evidence that KAS was at fault for renting out a non-Caterpillar access platform that lacked interlocks, renting out equipment that was unsafe for the intended use, failing to train or warn younger. No one has nothing to do with the sole cause instruction. What that has to do with is whether a defendant may admit evidence of multiple causes of the plaintiff's injury. It's not the issue here. The evidence was admitted. That deprives them of the right to obtain the sole proximate cause instruction. They don't dispute that the long form is not proper when misuse is foreseeable. And Judge King challenged us to say what the evidence of foreseeability was. It's in the record. It's discussed in our brief at pages 15 through 17 and page 31. Our expert testified that the telehandler was used in a reasonably foreseeable manner. That's in the record from page 440 through page 443 and 450. He was specifically asked, did you know that Yoder and Duff did these things? He said, yes. He said, that's foreseeable. Caterpillar cites no evidence, and there isn't any in the record, that Duff's use of the machine was not foreseeable. Gross testified. Gross was their corporate rep. He testified Caterpillar researched integrated lateral stability indicators to reduce chip overs. That's what Mr. King just got through telling me was the sole proximate cause. If Caterpillar was researching what they claim the sole proximate cause was, it's foreseeable as a matter of law. Gross testified that Caterpillar had once used rear axle interlocks to increase lateral stability to prevent this kind of accident, but removed them because customers had complained. That's in the record at 390 and 1301. It's foreseeable,  what could prevent this kind of injury, it's foreseeable when you actually implement it and then pull it out because of fear of loss of sales. Brass was their expert, and Gross both acknowledged that anyone can operate these machines. They don't anticipate that they will be limited to trained operators. Gross admitted that Caterpillar reasonably anticipated that the telehandler would be used on construction sites, on uneven surfaces, and would be moved across the ground with the boom raised or extended. And that's in the record at page 392. That establishes foreseeability of misuse. The family discord evidence in this case that Mr. King talked about, it's nothing short of character assassination. And to suggest that they put it in even though it wouldn't put the plaintiff in a bad light is as disingenuous as bringing up the plaintiff's drug and alcohol problems here today. There's only one reason to do that, and that's to prejudice the listener against the plaintiff. The evidence should never have been admitted, and the trial judge recognized that. Caterpillar justified admission of the evidence by claiming it was related not to damage, but to causation. And that takes it out of the line of cases that Mr. King is arguing. If there's no causation, there's a defense verdict. It doesn't have to do with a finding that the product was safe or not a reasonable use. Are you saying that he did not argue and that the counsel for Caterpillar did not argue in the trial court that it had to do with loss of normal life? He did argue that. He also argued, and this is in the record of page 310, and I'll quote it. It could be a cause. So it's all the family dysfunction that was causing him problems beforehand, and that was what she was treating him for. So he's arguing that the brain damage in this case was not a cause of his problems. It was really this family dysfunction stuff. So to come in and say, oh, no, the evidence only went to damages is simply incorrect. That wasn't the argument at trial. They were arguing it went to damages and to causation. It should not have gone to damages, though, because this term is boycotted on its head to suggest that loss of a normal life, any time you claim loss of a normal life, allows the defendant to put in all evidence of what normal was before, when what you are claiming is limited very specifically to things that health care providers have given professional opinions are linked to your brain damage. So this is akin to saying that one time I had a pain in my back. I got hurt at work. Doctor has back surgery. The pain in your back from 20 years ago comes into evidence. It's exactly what Boykin prohibits, and there's nothing different about this. The objecting party, once the trial court has made it clear that the evidence is coming in, this court in Brown v. Baker, which is in our brief at page 38 and 39, says once the court rules the evidence is admissible, plaintiff is entitled to introduce evidence to address that. That doesn't waive, I don't know, the issue. Now, we also objected, not only at the beginning, but also right before the depositions were played. Trial counsel said, I'm renewing my objection to the issues regarding the family dysfunction for both Dr. Schwartz and Dr. Bychhorst. So that was immediately beforehand. The argument about lack of prejudice when there's a defense verdict was also rejected in Boykin, where they reversed because of the inadmissible evidence that related to prior conditions despite a defense verdict. So I don't think their argument in that regard has traction. We also cited Caliban v. Patel, where the prior evidence of accidents and injuries required reversal. It doesn't necessarily... I'm sorry, I'm a little dry here. It doesn't necessarily get them off the hook because of the defense verdict. Thank you, counsel. Counsel for the appellant in rebuttal. In all honesty, Mr. Gibson, I see this entirely differently. I think you're not aware would an appellate court ever reverse a good trial argument in that case. The sole proximate cause instruction was perfectly proper. It needed to be given. There was evidence of it. The attorney needed to be told how to use it. And the pre-accident aspects of the life of the plaintiff were not so pervasive or prejudicial that you get a new trial for it. I want to talk about the party argument here. Gilbert was not a party when this case went to the jury because he was only brought in with the process on a third-party complaint. He was told that if Caterpillar got found liable, he might be liable to Caterpillar. But he was never told by the plaintiff or served with a complaint told that we're going to take a judgment against you. They say that because Caterpillar is serving with a counterclaim, that when it goes to the jury, they can take a judgment against you as a party? There's something called due process that's been lopped out here. They don't have the right to do that when they didn't tell him they were going to. Mr. Welch, or Justice Welch, you're a pilot. I know you understand this particular argument. I want to talk about the perceivable misuse argument for why the proximate cause instruction shouldn't be given. You know, every airplane, Piper, Cessna, it comes with six-pack instruments. They're safety instruments. They let you fly level and keep you from killing yourself in a plane when you don't know where the horizon is. One of them is called an attitude indicator. If you can look at the attitude indicator and you know how to use it, and you've got an altimeter and you know how to use that, with just those two instruments, you can keep from killing yourself and not getting spatial disorientation. Now, let me give you the hypothesis. Suppose you fly over a harbor or a bay, and there's a haze, and you lose the horizon, and you're not trained in instruments for the plane. You don't know how to use an attitude indicator, and it's not used. And you kill yourself, your wife, and your sister. When Piper was sued because of a defective product, does Piper not get to raise a sole proximate cause defense that you didn't use instruments that were the nature of safety? They can't use a piloted defense. Is this a Kennedy case? Kennedy? Yes. Of course they can put forth a sole proximate cause pilot error. This wasn't a difficult case, judges. This was a pilot error case. Caterpillar put on the machine and the instrument to make it safe in the terrain it was being operated in, and if it had been used, it doesn't tip over. Its center of gravity remains underneath the four wheels, and when the loft is put out there, it can't tip. And the plane's own expert testified to that. That's what the jury heard. There was a reason this jury was only out for an hour. It wasn't a tough case. It was a tough case for the plane. Caterpillar deserves what it fought for in St. Clair County. The plane got practically every ruling in this case. These were the only two rulings in the defendant's favor, and with regard to the use that damages issues, the prior life evidence was gored. It was so completely eviscerated that it does not look relevant at this point. And certainly if it's not relevant, it isn't very prejudicial to grant a new trial order. If not here, when will this court reverse a new trial order that the plane doesn't deserve? Thank you. Thank you, counsel. Mr. Ripps indicated a plan to file a motion to cite additional authority. We'll allow seven days for that and seven days to respond. The written order will ensue.